L. L. BRANCH, Appellee, v. DES MOINES RAILWAY COMPANY, Appellant.

No. 41296.

JUNE 24, 1932.

H. W. Hanson, for appellee.

Corwin R. Bennett, for appellant.

GRIMM, J.—On July 14, 1930, a collision occurred at a street intersection in the City of Des Moines between a truck owned and operated by the plaintiff and a street car bus owned and operated by the defendant. The accident occurred at the intersection of Forty-sixth Street and Forest Avenue. Forty-sixth Street runs north and south and Forest Avenue runs east and west.

For brevity and convenience, we will hereinafter refer to

the defendant's street car bus as the "bus" and the plaintiff's conveyance as the "truck."

The bus was traveling north on the east side of Forty-sixth Street and the truck was traveling east on the south side of Forest Avenue. The truck was equipped with a long, "home-made" farm wagon body on the rear, fitted up with two long seats on either side and a canvas top with curtains which could be rolled up or let down, as the case required. It was used as a conveyance in transporting coal miners from the mines to various parts of Des Moines, where the various coal miners resided. At the time of the accident, the curtains were up. The truck was being driven from a glass-enclosed cab of the ordinary type, except that the partition between the cab and the truck proper was only about waist-high to the driver as he sat in the cab seat. The truck, owned by the plaintiff at the time of the accident, was being driven by the plaintiff's son. The plaintiff sat very close to and immediately back of the driver and was in a position to dictate and control the driver's operations in connection with the truck. At the time of the accident, there were two men sitting with the driver in the cab of the truck and a total of seventeen men were in the truck. The accident happened shortly after five o'clock in the afternoon. The streets were dry and the weather was clear.

As previously noted, the plaintiff was sitting immediately behind his son who was driving the car, and was sitting in such a position that he was looking south and slightly to the east. According to the plaintiff's own story, while he was riding in this position, he saw the defendant's bus when it was about 125 feet south of the intersection. As he saw the bus, he concluded it was driving at a speed of 35 or 40 miles per hour, and the plaintiff claims the bus did not slow up for the intersection. The plaintiff claims that as the bus drove north, it became necessary for it to turn to the left to pass two automobiles which were parked on the east side of Forty-sixth Street and south of Forest Avenue. The plaintiff estimates that the car farthest north of these two parked cars was in the neighborhood of fifty feet from Forest Avenue and the second one appeared to be fifteen or twenty feet south. Both of these parked cars were headed north.

The plaintiff claims that when he first saw the bus, the

truck was about thirty feet from the west line of Forty-sixth Street and traveling at not to exceed twelve or fifteen miles per hour. The plaintiff alleges his truck could have been stopped in six feet. It appears that Forty-sixth Street is thirty feet wide. Plaintiff's own version of the actual collision is as follows:

"I was just beginning to approach the intersection, got in 4 feet, when he swung the front end of his bus out to keep from hitting me square, and he carried the north end of the bus northeast running, and to keep from swinging his car up on the curb he hits me on my fender and snaps the right side of my car loose, throwing me loose from the bus, the front wheels resting upon the sidewalk, the hind wheels against the curb. He ran then 75 feet from where I stopped. After the accident my car was setting on the northeast corner of the intersection. My truck was partly facing northeast."

Photographs of the bus and the truck were introduced in evidence.

It is conceded in the record that the bus, for license purposes, weighs 9300 pounds. It is a long passenger bus with seven windows on each side. It conclusively appears from the record and particularly from the photographs that the bus was struck almost squarely on the left rear wheel by the front end of the truck. From the damage to the truck, it quite satisfactorily appears that the truck collided with the bus at almost a perfect right angle to the bus. The front end of each fender of the truck is crumpled up. The lights on either side of the front of the truck are almost completely demolished and the bumper for its whole length is twisted and bent in several directions.

From the testimony of the plaintiff's son, who was driving the truck at the time of the accident, it is learned that he was then twenty-two years of age and a thoroughly experienced driver. He claims to have approached Forty-sixth Street at from ten to twelve miles per hour, and he first saw the bus when it was 75 or 100 feet south of Forest Avenue. When he first saw the bus, it was traveling at the rate of from thirty to forty miles per hour and the truck was 30 or 40 feet west of the intersection. He states that when he first saw the bus, it just started to pull around the cars which were parked on the

east side of Forty-sixth Street. He claims he could stop the truck from within four to six feet.

As the truck was proceeding eastward on Forest Avenue, it was traveling slightly uphill. From the testimony of all of the witnesses, it satisfactorily appears that after the bus turned out to the west to pass the parked cars on the east side of Forty-sixth Street, it continued northward with at least a part of the bus west of the center line of Forty-sixth Street. Some witnesses place the bus in the west half of Forty-sixth Street.

I. The pivotal question in this case is whether a verdict should have been directed for the defendant on the ground of the alleged contributory negligence of the plaintiff. The material facts are not in dispute.

It will be recalled that the plaintiff owned the truck and could have controlled its operations as it was being driven by his son immediately before and at the time of the accident. The plaintiff was sitting facing south and east in a position where he saw the approach of the bus from the south. He knew the speed at which it was approaching Forest Avenue. He knew how far his truck was from Forty-sixth Street and how fast his truck was going. The record clearly shows he had full knowledge and comprehension of the entire situation. From his own story, which is substantially corroborated by that of his son, who sat at the wheel, the plaintiff knew and understood that the bus was approaching the intersection at a speed three times that of the truck and that the bus had a distance to travel to get into the intersection of only twice the distance necessarily covered by the truck in order that the truck might get into the intersection. In other words, both the plaintiff and his son testified to a state of facts about which there is no disagreement, which clearly demonstrated that the bus would necessarily be in the intersection first. The plaintiff and his son both knew and understood this, and yet the plaintiff undertook to go through the intersection ahead of the bus. Under such circumstances, the bus had the right of way. The truck struck the left rear wheel of the bus at approximately right angles.

This is not a case where the plaintiff was assuming that the bus would drive within the speed limits provided by the law and was misled thereby. There were no interferences or obstructions. The plaintiff clearly saw every movement of the

bus even to the details of its passing to the left in order to get around from behind the parked cars standing on Forty-sixth Street. He was in full possession of all of the facts and does not claim to have been misled in any manner.

Section 5035 of the Code reads as follows:

"5035. Preference at intersecting points—alleys. Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way provided, however, that such vehicles coming from alleys and private drives, where the view is obstructed, shall stop immediately before entering a public street or highway."

Under the law, it was the duty of the bus to travel on the east half of Forty-sixth Street, but owing to the presence of the parked cars in said east portion of Forty-sixth Street, it became necessary for the bus to pass to the left, and in so doing, go upon the westerly half of Forty-sixth Street.

The evidence tends to show that the north end of the most northerly car of the two parked cars was only about fifty feet from the south line of Forest Avenue. The bus in question was long and heavy.

Whether, under the circumstances, it was negligence on the part of the bus not to get back onto the east half of Forty-sixth Street as it entered Forest Avenue, we do not have occasion to determine. If, notwithstanding the negligence of the driver of the bus, the plaintiff was guilty of negligence, contributing directly to the accident and resulting injury, he cannot recover, regardless of the negligence of the defendant. This principle is so well established that a citation of authority is unnecessary, but we quote the following from a very recent case entitled Rosenberg v. Des Moines Railway Co., 213 Iowa 152, l. c. 155:

" 'The presence or absence of contributory negligence, generally speaking, is peculiarly a question for the jury. * * * Moreover, it is to be remembered that there are some instances where it is the province of the court, and not the jury, to judge whether or not the contributory negligence is such as to bar a recovery.' Murphy v. Iowa Electric Co., 206 Iowa 567, reading on page 571."

A majority of this court, which majority does not include the writer, is of the opinion that under all the facts and circumstances in this case, the question of contributory negligence was properly presented to the jury.

II. Without going into details in reference to the evidence in the case, the majority think there is sufficient evidence in the record to warrant the court in submitting the question of negligence of the defendant to the jury.

It follows that the cause must be, and is,—Affirmed.

WAGNER, C. J., and EVANS, STEVENS, FAVILLE, and KINDIG, JJ., concur.